UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-21317-Civ-COOKE/TORRES

QUOC KHANH BUI, individually, and on behalf
of himself and all others similarly situated, and
ALEXANDER SANTIAGO,

    Plaintiffs,

v.

MINORITY MOBILE SYSTEM, INC., a Florida
corporation, ITRANSPORT SERVICES, INC.,, a
Florida corporation, ALEIDA COBO, individually,
and JOANNE R. URQUIOLA, individually,

    Defendants.
_____/

**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

    Plaintiffs Quoc Khanh Bui ("Mr. Bui") and Alexander Santiago ("Mr. Santiago") bring this action alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") by Defendants Minority Mobile System, Inc. ("Minority Mobile"), iTransport Services, Inc. ("iTransport"), Aleida Cobo ("Ms. Cobo"), and Joanne R. Urquiola ("Ms. Urquiola"). Defendants Minority Mobile and Ms. Cobo filed a Motion for Summary Judgment (ECF No. 80) on November 9, 2015, arguing that Plaintiffs' claims prior to April 4, 2013 are barred by the FLSA's two-year statute of limitations, and that the FLSA does not apply to Plaintiffs' claims prior to March 31, 2013 because Plaintiffs were independent contractors. Defendants iTransport and Ms. Urquiola filed a Motion for Summary Judgment (ECF No. 81) on November 9, 2015, arguing that all claims against them must be dismissed because they never employed Plaintiffs. Plaintiffs filed their Responses in Opposition to Defendants' Motions for Summary Judgment (ECF Nos. 95, 96) on December 10, 2015, to which Defendants filed their Replies on December 21, 2015 (ECF Nos. 99, 100). After reviewing Defendants' Motions for Summary Judgment, the Responses and Replies thereto, the record, and relevant legal authorities, Defendants Minority Mobile and Ms. Cobo's Motion for Summary Judgment is granted in part and

denied in part while Defendants iTransport and Ms. Urquiola's Motion for Summary Judgment is granted.

## I. FACTUAL BACKGROUND

Minority Mobile, wholly owned by Aleida Cobo, and iTransport, wholly owned by Joanne R. Urquiola, provide special transportation services for Miami-Dade County under its paratransit system. Defs.' Statements Undisputed Facts ¶¶ 1, 2, ECF Nos. 80, 81. These special transportation services, offered to persons with disabilities or special needs who are unable to use the public mass transportation system within Miami-Dade County, are provided through a fleet of cars and vans separately owned and operated by private providers, such as Minority Mobile and iTransport. *Id.* at ¶ 1. Minority Mobile and iTransport are separate entities that maintain separate accounting records, bank accounts, lines of credit, billing accounts, payroll accounts, telephone numbers, vendors, drivers, insurance plans, benefit plans, policies, IT systems, personnel records, vehicles and equipment, and hiring and termination practices. ECF No. 81 at ¶ 3.

Mr. Bui and Mr. Santiago are former special transportation services drivers. On January 23, 2012 and December 11, 2008, Minority Mobile entered into a Contract for Services with Mr. Bui and Mr. Santiago, respectively. ECF No. 80 at ¶ 3; ECF No. 82-1, Ex. A. This Contract, which was provided to Mr. Bui in Spanish, provides in relevant part:

> 2.1 <u>Specific Services</u>. Contractor agrees to provide transportation services for STS passengers in accordance with the rules and regulations established by Miami-Dade County. The services to be provided by Contractor, include, but are not limited to:
>   a. transporting passengers in a timely manner in accordance with the manifest provided by the Company;
>   b. collecting cash or vouchers from each passenger;
>   c. submitting a completed manifest and billing report to the Company on a daily basis, indicating the number of passengers transported, and the amount of cash and number of vouchers collected.
> 2.2 <u>Method of Performing Services</u>. Contractor will determine the method, details and means of performing above-described services.
> 3.1 <u>Payment</u>. In consideration for the services to be performed by the Contractor, Company agrees to pay Contractor an amount per trip to be determined at the time of the rendition of Contractor's services.

> 3.2 <u>Date for Payment</u>. Contractor will submit to Company a daily manifest and billing report. Company agrees to pay the amount due to Contractor for services within fifteen (15) days of receipt of the statement.
> 3.3 <u>Payment and Expenses</u>. Contractor agrees to pay all fuel expenses, tolls, car wash, traffic infractions, cell phones, uniforms, maps, and other out-of-pocket expenses required to perform services under this Agreement, and acknowledges that Company shall have no responsibility to reimburse him for those costs.
> 4.2 <u>Non-Exclusive Relationship</u>. Contractor may represent, perform services for and contract with as many additional Companies, persons or companies as Contractor, in his sole discretion, sees fit; provided, however, that such other services must not interfere with Contractor's ability to comply with Section 4.1 or adversely affect the quality of the services provided by Contractor to Company.
> 4.7 <u>Licenses</u>. Contractor agrees to obtain and maintain it, at Contractor's expense, all chauffer's (HACK) and other licenses and certifications required by Miami Dade County for the rendition of his services under this Agreement and to participate in all training required by Miami-Dade County for providers of STS services.
> 5.2 <u>Vehicles</u>. Company agrees to provide Contractor with a vehicle to be used by contractor for the transport of STS passengers under this Agreement.
> 6.1 <u>Termination At-Will by Either Party</u>. Either party may terminate this Agreement at any time and for any reason or no reason, with or without notice.

ECF No. 82-1, Ex. A.  Mr. Bui and Mr. Santiago were responsible for obtaining and maintaining a HACK license and Florida driver's license with a clean record.  ECF No. 80 at ¶ 5.  They were subject to unannounced inspections by Miami-Dade County inspectors who checked their HACK license, as well as other vehicle requirements.  ECF No. 80 at ¶ 7.

Mr. Bui and Mr. Santiago were also provided with a daily manifest of the trips to be taken for the day.  Pls.' Resp. ¶ 4, ECF No. 95.  They were only allowed to work based off of the manifest provided to them.  *Id.* at ¶ 6.  However, Mr. Bui and Mr. Santiago could decide the number of trips they would make per day based on the manifest provided and how to transport passengers.  ECF No. 80 at ¶ 5.  The daily manifest only provided the name and address of each passenger and a scheduled pick-up time.  *Id.* at ¶ 10.  Mr. Bui and Mr. Santiago would decide which route to take to pick up passengers and then record the

3

pick-up time, drop-off time, and mileage for each trip in the manifest. *Id.* at ¶¶ 5, 10. Additionally, Mr. Bui and Mr. Santiago collected cash and vouchers from each passenger, and then completed and submitted a daily manifest and billing report for payment purposes. *Id.* Any passenger complaints were handled by Miami-Dade County, which had the authority to de-authorize drivers and disqualify them from performing services under the special transportation services contract. *Id.* at ¶ 8.

Mr. Bui and Mr. Santiago were not provided any fringe benefits such as health insurance, paid vacation, paid personal time, sick leave, or bonuses. *Id.* at ¶ 6. They were not subject to payroll withholding or taxes, and were provided with tax form 1099 for their services. *Id.* They were paid $10.00 per trip for ambulatory passengers and $13.50 per trip for transporting passengers in wheelchairs. *Id.* at ¶ 9. As a subcontractor under a Miami-Dade County special transportation services contract, Minority Mobile was responsible for ensuring that its drivers were paid in accordance with the Miami-Dade County Living Wage Ordinance, which required that drivers earn at least $12.23 per hour for the first forty hours of work performed and $18.35 for all hours worked over forty hours per week. *Id.* at ¶ 11. Each payroll period, Minority Mobile first calculated Mr. Bui and Mr. Santiago's compensation based on the number of trips each one performed during the week, as reported in their daily manifests. *Id.* at ¶ 12. Minority Mobile then completed a second calculation based on the total number of hours worked by Mr. Bui and Mr. Santiago per week, as reported in the manifests submitted, excluding time between trips. *Id.* at ¶ 13. Mr. Bui and Mr. Santiago were paid the higher of the two calculations. *Id.* at ¶ 14.

Effective April 1, 2013, Minority Mobile became a subcontractor for Transportation America under a new special transportation services contract with Miami-Dade County. *Id.* at ¶ 18. As such, Minority Mobile decided it would move from utilizing independent contractors to hiring employees to perform special transportation services. *Id.* Both Mr. Bui and Mr. Santiago were offered, and accepted, employment with Minority Mobile effective April 1, 2013. *Id.* at ¶ 19. Mr. Bui resigned on March 18, 2015 while Mr. Santiago's employment ended on August 25, 2013. *Id.* at ¶ 21.

## II.   LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

4

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

### III. ANALYSIS

Defendants filed two separate motions for summary judgment, raising different issues in each motion. I will address each motion, and the issues raised therein, separately.

### A. Defendants iTransport and Ms. Urquiola's Motion for Summary Judgment

Defendants iTransport and Ms. Urquiola argue that they never employed Mr. Bui or Mr. Santiago, and therefore, all counts against them must be dismissed. Additionally, they argue that Mr. Bui and Mr. Santiago have failed to present any evidence to hold them accountable as joint employers. In response, Mr. Bui and Mr. Santiago state that they were employees of iTransport and Ms. Urquiola and that iTransport and Ms. Urquiola are their joint employers.

1. Employer

Congress enacted the FLSA "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1207 (11th Cir. 2015) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18 (1945)). However, the protections of the FLSA extend to "employees" only. *Id.* As a result, only individuals falling within the Act's definition of "employee" are entitled to minimum wages and overtime. *Id.* The statute defines an "employee" as "any individual employed by a employer," and an "employer," in turn, as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §§ 203(d) and (e)(1). The Act also provides that the term "employ" means "to suffer or permit to work." *Id.* at § 203(g).

As to whether Mr. Bui and Mr. Santiago were employees of Defendants iTransport and Ms. Urquiola, a review of the record evidence indicates that they were not. In support of their contention that they were employees of iTransport and Ms. Urquiola, Plaintiffs assert that the routes they drove included pick-ups for both Minority Mobile and iTransport and that Minority Mobile and iTransport shared the same manager, account dispatcher, office space, personnel, waiting area, and receptionist. However, evidence submitted by Defendants, including tax returns, pay stubs, and run manifests, indicate that Plaintiffs performed services for Minority Mobile and other special transportation service providers, but not for iTransport. *See* ECF No. 100 Ex. A, B, C. More specifically, in his tax return, Mr. Santiago submits 1099 forms from Minority Mobile and Nice Transportation Services. There is no indication on his 2013 tax return that he was employed by iTransport. Additionally, pay stubs for Mr. Santiago indicate payment by Minority Mobile, and not

iTransport. Finally, run manifests completed by Mr. Bui indicate that they were for Minority Mobile, and not for iTransport.

Plaintiffs have failed to submit any record evidence, aside from their conclusory assertions, demonstrating that they performed work for both Minority Mobile and iTransport. Conclusory statements in a non-movant's affidavit, without specific supporting facts, have no probative value. *See Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985); *see also Broadway v. City of Montgomery*, 530 F.2d 657, 660 (5th Cir. 1976) (finding that an affidavit submitted in opposition to a motion for summary judgment was insufficient to create a genuine issues of material fact when it contained nothing more than a mere recital of unsupported allegations that were conclusory in nature).[1] In fact, Plaintiffs, in their affidavits, admitted that they were hired by Minority Mobile, they wore uniforms with the Minority Mobile logo, they signed a contract for services with Minority Mobile, they received payment from Minority Mobile, and their HACK license only permitted them to drive for Minority Mobile. Therefore, I find that Plaintiffs have failed to demonstrate that they were employees of iTransport and Ms. Urquiola.

2. Joint Employer

Plaintiffs next argue that iTransport and Ms. Urquiola are joint employers, and should be held jointly and severally liable for any FLSA violations along with Minority Mobile and Ms. Cobo. The determination of joint employment is a question of law. *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986). Courts analyze whether a defendant is a joint employer under the FLSA using an eight-factor test: (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) preparation of payroll and the payment of wages; (6) ownership of facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities. *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1176 (11th Cir. 2012). No one factor is dispositive and the existence of a joint employer relationship depends on the economic reality of the circumstances. *Id.* at 1177.

---

[1] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

In support of their argument that iTransport and Ms. Urquiola should be considered joint employers, Plaintiffs again rely on conclusory statements in their respective affidavits. Plaintiffs assert that iTransport shared the same dispatcher as Minority Mobile and that the routes driven included passengers who were clients of both iTransport and Minority Mobile. However, the record evidence clearly contradicts Plaintiffs' conclusory assertions. Additionally, Plaintiffs have failed to demonstrate, aside from their own conclusory allegations, that iTransport and Ms. Urquiola controlled, supervised, or directed any aspect of their employment. Therefore, I find that Plaintiffs have failed to demonstrate that iTransport and Ms. Urquiola acted as joint employers.

### B. Defendants Minority Mobile and Ms. Cobo's Motion for Summary Judgment

1. <u>Statute of Limitations</u>

In their Motion for Summary Judgment, Defendants Minority Mobile and Ms. Cobo first argue that the FLSA's two-year statute of limitations, and not its three-year statute of limitations, should be applied to Plaintiffs' claims because Plaintiffs have failed to demonstrate that Defendants Minority Mobile and Ms. Cobo acted willfully. Although the ordinary statute of limitations in cases brought under the FLSA is two years, a cause of action arising out of a willful violation of the FLSA may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). To establish a willful violation, "the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162-63 (11th Cir. 2008).

However, a court cannot make a determination on the issue of willfulness until it is first determined that a violation of the FLSA actually occurred. *See Allen v. Bd. of Public Ed.*, 495 F.3d 1306, 1324 (11th Cir. 2007) (concluding that because "triable issues of fact remain[ed] as to some of [the p]laintiffs' claims … a determination of which statute of limitations to apply must be reserved until it is determined whether a violation of the FLSA occurred."). As such, because liability is still disputed in this case (and not addressed by the instant motion or otherwise conceded by Defendants), I cannot say whether Defendants' conduct was or was not willful. Thus, Defendants' Motion for Summary Judgment to limit Plaintiffs' recovery based on the application of a two-year statute of limitations is denied.

8

    2. Independent Contractor

Defendants next argue that Plaintiffs were independent contractors prior to April 1, 2013,[2] and are thus not entitled to overtime under the FLSA. The protections of the FLSA extend only to "employees," not independent contractors. *See Scantland v. Jeffrey Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). The inquiry to determine whether a party is an employee or an independent contractor is not governed by the "label" put on the relationship by the parties, or the contract controlling that relationship, but rather focuses on whether "the work done, in its essence, follows the usual path of an employee." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947). "[P]utting on an 'independent contractor' label does not take the worker from the protection of the Act." *Id.*

Courts have applied the following multifactor test to guide the "economic reality" inquiry: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business. *Scantland*, 721 F.3d at 1312. While these factors serve as a guide, the overarching focus of the inquiry is economic dependence. *Id.* (citing *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976)) (The … tests are aids—tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is *dependence* that indicates employee status.") (emphasis in original). Ultimately, in considering economic dependence, courts focus on "whether an individual is in business for himself or is dependent upon finding employment in the business of others." *Id.* at 1312 (internal quotation marks and citations omitted).

Defendants Minority Mobile and Ms. Cobo present the following facts in support of their assertion that Plaintiffs were independent contractors prior to April 1, 2013: Plaintiffs were required to be licensed by the State of Florida and Miami-Dade County; Miami-Dade County conducted inspections to ensure compliance with its requirements for the

---

[2] Defendants use the date of March 31, 2013 in their Motion. However, since Defendants entered into employment contracts with Plaintiffs effective April 1, 2013, it is more accurate to use April 1, 2013 as the relevant date.

9

transportation of special transportation services passengers; Miami-Dade County retained the authority to discipline and de-authorize special transportation services drivers; Plaintiffs decided whether to make trips or not on any given day; Plaintiffs determined the number of trips they made per day, the days per week they worked, and the hours per day they worked; Plaintiffs were paid per trip; Plaintiffs were free to take time off whenever they wanted; Plaintiffs determined how to transport passengers, including what route to take; Plaintiffs managed their own expenses with respect to the transportation of passengers, including fuel, tolls, car washes, traffic infractions, maps, and other out-of-pocket expenses such as fees for obtaining chauffeur and HACK licenses; Plaintiffs were free to perform services for other special transportation services providers; and Plaintiffs could terminate their contract for services with Defendants at any time.

      In response, Plaintiffs present the following information to demonstrate that they were employees of Defendants Minority Mobile and Ms. Cobo: Plaintiffs were required to wear Minority Mobile uniforms; Plaintiffs had to ask for permission to take time off; Defendants controlled the days and hours Plaintiffs worked; Plaintiffs were not allowed to deviate from the manifest provided; Plaintiffs were not allowed to work for any other company; the HACK license only allowed Plaintiffs to drive for the company identified on the license (Minority Mobile); the vehicles driven belonged to Defendants; and Plaintiffs had to spend time each morning and evening inspecting, cleaning, filling gas, and checking the engine of the vehicle driven that day.

      After considering the facts and arguments presented by all parties, as well as the record evidence, I find that Plaintiffs were independent contractors prior to April 1, 2013. Economic dependence guides this analysis, and I find, from the facts on the record, that Plaintiffs were free to perform special transportation services for any subcontractor providing special transportation services under contract with Miami-Dade County. Plaintiffs' assertions that they had no choice as to who they picked up or when they picked that person up are unavailing. While Plaintiffs may not have been able to deviate from the exact specifications of each manifest, i.e. who to pick up, when, and from where, it was within their discretion to determine how many pick-ups to complete on each manifest and whether or not they drove on a certain day.

Plaintiffs' assertion that their HACK license prevented them from driving for any other company is also unavailing. Limitations imposed by the HACK license do not indicate any control asserted by Minority Mobile or Ms. Cobo. Instead, the record evidence indicates that Plaintiffs were free to drive for other subcontractors, provided they obtained the proper licenses from the state and the county. This is further supported by Mr. Santiago's 2013 tax return, which indicates that he did in fact drive for another special transportation services provider while also providing services for Minority Mobile. Finally, Plaintiffs' contention that they drove vehicles owned by Defendants is also unsupported by the record evidence. Mr. Santiago's 2013 tax return indicates that he drove his own vehicle when providing special transportation services. On Schedule C, he claimed $17,851.00 in car and truck expenses, and stated that he placed his vehicle in service for business purposes as of January 1, 2008.

As previously stated above, non-moving parties may not attempt to create genuine issues of material fact merely by submitting affidavits in opposition to a motion for summary judgment. *See Broadway*, 530 F.2d at 660. Plaintiffs here submitted affidavits, which, by their own assertion, are only summaries, with conclusory statements completely unsupported by the record. In fact, Plaintiffs affidavits are, at times, internally inconsistent, and also inconsistent with the record evidence. After reviewing the record before me, and viewing the facts in the light most favorable to the non-moving party, I find that Plaintiffs were independent contractors prior to April 1, 2013. The record supports Defendants' contention that they transmitted information contained in manifests to Plaintiffs, and it was up to each Plaintiff to decide how to proceed from there.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. Defendants iTransport Services, Inc. and Joanne R. Urquiola's Motion for Summary Judgment (ECF No. 81) is **GRANTED**. Defendants iTransport Services, Inc. and Joanne R. Urquiola are **DISMISSED** *with prejudice* from this case.
2. Defendants Minority Mobile Systems, Inc. and Aleida Cobo's Motion for Summary Judgment (ECF No. 80) is **GRANTED** *in part* **and DENIED** *in part*.

**DONE and ORDERED** in chambers, at Miami, Florida, this 28th day of January 2016.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*